## John Heard *versus* Charles E. Bowers *et al.*

In an instrument under seal the plaintiff covenants, that on or before a day named he will convey and quitclaim to the defendants all his right, title, and interest in a proprietary township held by him in common with the other proprietors, his proportion being by estimation 6343 acres or thereabouts, upon their paying him $6343, being one dollar an acre, one quarter in cash on the delivery of the deed, and the other three quarters in three annual instalments, and securing the payment thereof with satisfactory collateral security ; and the defendants covenant, that on or before the same day, they will give notice to the plaintiff of their agreeing or declining to purchase the land, and that if they shall purchase it, they will pay the plaintiff the sum of $6343, one quarter in cash on delivery of the deed, and the remainder in three equal annual instalments in three promissory notes secured by mortgages or other collateral security. And the defendants further covenant, that if they shall decline to make the purchase, or fail to give the plaintiff notice thereof, or to make the payments in case they shall purchase, and to perform their several covenants, they will pay the plaintiff the sum of $300 ; " to the true and faithful performance of each and every the covenants, promises, and agreements aforesaid, each of the said parties binds himself to the other in the sum of $1000, as liquidated damages agreed upon between the said parties for the breach of either of the said covenants." On a breach by the defendants, of their covenant to give notice of their declining to make the purchase, it was *held*, that the measure of damages was the sum of $300, and that the sum of $1000 was a penalty and not liquidated damages.

Where a party stipulates to convey an estate to another at a future day, and in the mean time conveys it to a third person, he is guilty of a breach of his stipulation, and although he should repurchase the estate before the day named, he could not compel the other party to take the land and perform the contract on his part ; but this rule does not apply to the case of an involuntary disability of a party to perform his stipulations, which he may remove previous to the time appointed for their performance.

Thus it was *held*, that the conveyance of a part of the township above mentioned, by an agent of the proprietors, pursuant to a vote of a majority, after the date of the contract between the plaintiff and the defendants, and before the day named for the performance of it, without the knowledge of either party until after that day, did not discharge the defendants from their covenants, but would only entitle them to a compensation in damages in case they had agreed to make the purchase.

THIS was an action of debt upon an instrument under seal, dated the 28th of March, 1835, between the plaintiff on the one part, and Charles E. Bowers and Stephen Titcomb, the defendants, on the other. In this instrument, the plaintiff agrees that he will, on or before the 20th of August, 1835, grant, bargain, convey, and quitclaim unto the defendants, their heirs and assigns, all his right, title, interest, claim, and demand in and to all the land lying and being in township number Seven, in the county of Oxford and State of Maine, and now

held in common with the proprietors thereof, and containing by estimation 6343 acres or thereabouts, upon the defendants' paying to him or his assigns therefor, on or before the 20th of August, the sum of $ 6343, being one dollar per acre, one quarter part of the purchase money in cash on the delivery of the deed, and the remaining three quarter parts in three equal instalments, in one, two, and three years from the 20th of August, with interest thereon annually, and securing the payment thereof with satisfactory collateral security. And the defendants, for themselves and their and each of their executors and administrators, covenant, promise, and agree, to and with the plaintiff, his executors and administrators, that they will, on or before the 20th of August, give notice to the plaintiff or his assigns, of their agreeing or declining to purchase the land at the price and upon the terms mentioned ; and they further promise, covenant, and agree, to and with the plaintiff, that if they, the defendants, shall agree to purchase of the plaintiff the said land as aforesaid, they will pay to him or his assigns therefor the sum of $ 6343, in manner following, to wit, one quarter part in cash on delivery of the deed, and the remaining three quarter parts in three equal instalments, in three promissory notes of hand, payable to the plaintiff or order, one payable in one year with interest, another payable in two years with interest thereon annually, and the other payable in three years with interest thereon annually, and secure the payment thereof by good and sufficient mortgages or other satisfactory collateral security. " And the said Charles E. Bowers and Stephen Titcomb do, in consideration of the premises and of one dollar paid them by the said John Heard, by these presents, covenant, promise, and agree with the said John Heard, that if they, the said Charles E. and Stephen, shall decline to make the said purchase of said land as aforesaid, and at the price aforesaid, or shall fail or neglect to give said Heard notice thereof as aforesaid, or shall fail or neglect to make the payments therefor as aforesaid, and keep and perform their several covenants, promises, and agreements in that behalf, that they, the said Charles E. and Stephen, will pay to the said Heard, the sum of three hundred dollars. To the true and faithful performance of each and every the covenants,

promises and agreements aforesaid each of the said parties binds himself to the other, his executors, administrators and assigns, in the sum of one thousand dollars, as liquidated damages agreed upon between the said parties for the breach of either of the said covenants aforesaid."

Heard
v.
Bowers.

The breach of covenant declared on was the failure of the defendants to give notice, before the 20th of August, of their election to purchase or not to purchase.

At the March term 1838 the defendants were defaulted, and the damages were to be assessed by the Court, upon the construction to be given to the terms of the agreement.

At the November term 1838, the plaintiff contended that he was entitled to recover the sum of $1000 as the liquidated damages for the breach of the agreement.

The defendants denied that the damages were liquidated, and alleged that the sum of $300 was the true measure, if the plaintiff was entitled to recover more than a nominal amount ; but they insisted that a nominal amount was all that he was entitled to recover.

If the defendants could be allowed to introduce testimony at this stage of the case, it was admitted, for the purpose of this hearing, that they could now prove that the proprietors of the township did, by a vote of a major part, passed about two years before the 28th of March, 1835, authorize their agent, residing on or near the township, to sell lots to actual settlers ; and that previous to that day the agent had contracted to sell to Moses Merrill, a settler, one lot containing about 100 acres, and afterwards, on the 5th of August, 1835, executed a deed of the same to Merrill ; that they could also prove that the plaintiff was the proprietor of a quarter part of the township ; but it was conceded that the plaintiff had no knowledge of the contract for the sale to Merrill, except what might be inferred from the proprietors' books, (which, if such evidence could now be introduced, were to be in the case,) or of the making of the deed to Merrill, until February 1839 ; and that the defendants had no knowledge thereof until after this suit was brought, nor any knowledge that the proprietors of the township had been organized or held any meetings as proprie-

tors, unless such inference can be drawn from the agreement in question.

*Aylwin* and *Paine* contended, that by the true construction of the instrument, the defendants were to pay the $300 for the refusal of the land, at all events, unless they should make the purchase, and that if they should omit to give notice of their election to purchase or not to purchase, they were to pay $1000, as liquidated damages. *Stearns* v. *Barrett*, 1 Pick 451 ; *Dakin* v. *Williams*, 17 Wendell, 447 ; *Astley* v. *Weldon*, 2 Bos. & Pul. 346 ; *Reilly* v. *Jones*, 8 Moore, 251 ; *Curtis* v. *Brewer*, 17 Pick. 513 ; 2 Story on Eq. 550.

The plaintiff had not disqualified himself, by his own act or that of his agents, to perform the contract on his part, so as to excuse the defendants. It was known to both parties, that the land was an undivided portion of a proprietary township, for this appears upon the face of the instrument, and that the proprietors might dispose of it by the vote of a majority in interest ; *St.* 1783, *c.* 39 ; and therefore the sale to Merrill cannot be regarded as the voluntary act of the plaintiff. The defendants' covenant to give notice was a precedent and col lateral covenant. *Wade* v. *Merwin*, 11 Pick. 286. Had they given notice, the plaintiff might have repurchased from Merrill. *Trask* v. *Vinson*, 20 Pick. 108 ; *Stearns* v. *Foote*, ibid. 434. The conveyance to Merrill was in pursuance of a contract made previously to the agreement between these parties and consequently the plaintiff held subject to that contract ; so that in effect his interest has undergone no alteration. Besides, the plaintiff covenanted to convey his right and title to 6343 acres or *thereabouts*, and the defendants would not have been liable to pay more than a dollar an acre.

*Rand* and *Fiske*, for the defendants, insisted that neither of the sums of $300 and $1000 was liquidated damages for a failure to give notice. The defendants had all the time till the last day, to make their election, and their neglect to appear before or on that day was of itself notice of their determination not to purchase ; the plaintiff therefore could not sustain any damage by reason of the alleged want of notice. The plaintiff asserts that the sum of $300 was to be paid as the price of the refusal of the land ; but it is not claimed on that

ground ; the breach alleged is the defendants' omission to give notice of their election. But each of the sums in question must be considered a penalty. *Astley* v. *Weldon*, 2 Bos. & Pul. 346 ; *Kemble* v. *Farren*, 6 Bingh. 141.

The plaintiff had disabled himself to perform the contract, by conveying a portion of the land ; and this excused the defendants from giving notice. *Ford* v. *Tiley*, 6 Barn. & Cressw. 325. The plaintiff had agreed to sell to the defendants all the interest which he had in the land at the time of making the contract. The act of the proprietors, in conveying to Merrill, must be considered as the plaintiff's voluntary act. He was aware of the power of the proprietors to make such a conveyance and he covenants against it. That the plaintiff might have repurchased of Merrill, does not alter the case. He would not then have the same title which he was to convey to the defendants ; they would be obliged to examine into the validity of the deeds to and from Merrill ; which is not within their contract.

WILDE J. delivered the opinion of the Court. At a former term the defendants were defaulted and the cause was continued under an agreement, that damages should be assessed by the Court according to the contract of the parties. At a subsequent term the defendants moved that the default should be taken off on the ground of newly discovered evidence, and the case was thereupon submitted on an agreed statement of facts. The action is founded on one of the defendants' covenants in a contract for the conditional sale and purchase of the plaintiff's right and title in a township of land in the State of Maine for a price agreed, by which the plaintiff covenanted to convey all his right and title to the township to the defendants on or before the 20th day of August then next ensuing. And the defendants covenanted on their part, that they would on or before said 20th day of August give notice to the plaintiff of the defendants' agreeing to or declining to purchase the land at the price stipulated, and also covenanted, among other covenants, that if they should decline to make the purchase at the price offered, or should neglect to give the plaintiff notice thereof, or should fail to make payment therefor according to the terms of the agreement, in case they should agree to pur-

chase the land, they would pay the sum of $ 300. The plaintiff relies on the supposed breach of the covenant to give notice of the defendants' election to decline or to agree to the purchase.

It is agreed that no notice was given to the plaintiff according to the agreement, and the defendants' counsel contend that the plaintiff had, after the contract, disabled himself to perform the contract on his part, and that therefore the defendants were not bound to give notice. It is admitted that the proprietors of the township, before the making of the contract, did by vote authorize their agent to sell lots to actual settlers, and that their agent, in pursuance of the vote, had contracted to sell to one Merrill, a settler, one lot containing about 100 acres, and afterwards and before said 20th day of August he did convey the same to him according to contract. But of th.s contract and sale it is agreed that neither of the present parties had any knowledge until long after the 20th of August, and after the defendants were defaulted. The question is, whether this be such a disability of the plaintiff to perform his contract, as excuses the defendants from giving notice as agreed.

The general doctrine undoubtedly is, that where a party stipulates to make a conveyance of an estate to another at a future day, and before the day conveys the estate to a third person, he is to be considered as guilty of a breach of his stipulation, and is liable to be sued before the day arrives. *Ford* v. *Tiley*, 6 Barn. & Cressw. 327 ; 5 Vin. Abr. 224. So although he should repurchase the same estate before the day appointed for the performance of his contract, he would still be liable for a constructive breach of his contract, and he could not compel the other party to perform it on his part.

This rule of law is not unreasonable, if it be confined to cases in which a party disables himself to perform his contract by some voluntary act inconsistent with an intention to perform it. Such an act may well be considered as equivalent to a refusal to perform the contract. But there seems no good reason for applying the rule to cases of the involuntary disability of a party to perform his stipulations, which he may remove previous to the time appointed for their performance The

case of *Trask* v. *Vinson*, 20 Pick. 111, was decided on a distinction nearly similar. In that case one Smith had contracted to sell and convey to one Hayden, by a good and sufficient warranty deed with the usual covenants, a certain tract of land therein described, on demand at any time within ninety days. Smith had no title to the land, and it was insisted that he could not convey it, and therefore the contract was invalid. But the Court say, "We know of no rule of law or principle of sound policy, which prohibits a person from agreeing or covenanting to convey an estate not his own. He might have authority from the owner to sell, or he might have the refusal of the estate, or he might rely on his ability to purchase it in season to execute the contract. If he fairly performs the terms of the contract, it matters nothing to the purchaser that the title was acquired after the contract." The only distinction between that case and this arises from the conveyance to Merrill, which was made after the contract and before the day appointed for its performance. But under the circumstances of the case we do not think the distinction very material.

That conveyance was unknown to both parties and consequently could not be the cause of the defendants' neglect to give notice according to his agreement. This neglect to give notice is equivalent to declining the contract, and must have been so understood. And if the defendants had expressly declined to abide by the contract, it is clear, we think, that they could not avail themselves of the conveyance to Merrill in reduction of the plaintiff's damages. So if the defendants had given notice to the plaintiff that they would comply with the terms of sale, the plaintiff would have been bound to make a conveyance, and no doubt would have so done in good faith, and the conveyance could not have been avoided by either party on the discovery of the prior conveyance to Merrill. That was a conveyance of a very inconsiderable part of the land, and if known would not probably have any influence on the defendants' election to accept or reject the proposal. He would be entitled to compensation in damages, and that would do equal justice to both parties. We do not think, therefore, that the conveyance to Merrill is material in the decision of the case, and that the defendants were bound to give notice according to their agreement.

39 *

On the subject of damages the plaintiff claims $ 1000 as the sum agreed upon by the parties as liquidated damages. It seems very difficult to discover from the terms of the contract, what was the true meaning of the parties as to this point. The defendants, in addition to the covenant already noticed, further covenant and agree, that if they shall fail to keep and perform their several covenants and agreements they will pay to the plaintiff the sum of $ 300.     Then follows the stipulation on which the plaintiff's counsel rely :    " To the true and faithful performance of each and every the covenants, promises and agreements aforesaid, each of the said parties binds himself to the other, his executors, administrators and assigns, in the sum of $ 1000, as liquidated damages agreed upon between the said parties for the breach of either of the said covenants."    These stipulations on the part of the defendants are manifestly inconsistent, if the latter is to be considered as a stipulation for the payment of liquidated damages.    The only way in which they can stand together is to consider the latter as a penalty.    For it is impossible to suppose that the defendants intended to stipulate that they would pay $ 300 for the breach of any covenant on their part, and immediately to add that they would pay $ 1000 for the same breach.    But if the latter stipulation was intended to provide for the enforcing the payment of the $ 300, then it must be considered as a penalty, notwithstanding the language of the covenant.    For as *Chambre* J. remarked in the case of *Kemble* v. *Farren*, 6 Bingh. 143, " There is one case in which the sum agreed for must always be considered as a penalty, and that is, when the payment of a smaller sum is secured by a larger."    So *Tindal* C. J. says in the same case, " That a very large sum should become immediately payable, in consequence of the non-payment of a very small sum, and that the former should not be considered as a penalty, appears to be a contradiction in terms." The agreement in that case contained a clause, that if either of the parties should neglect or refuse to fulfil the agreement, or any part thereof, or any stipulation therein contained, such party should pay to the other the sum of £ 1000; which sum was declared " to be liquidated and ascertained damages, and not a penalty or penal sum, or in the nature thereof."    One of

the stipulations in the agreement was, that the plaintiff should pay the defendant 3*l.* 6*s.* 8*d.* for every night on which the theatre should be open for theatrical performance, and in which the defendant agreed to act as a comedian ; and the defendant agreed to conform to the regulations of the theatre. It was decided by the court, that the £ 1000 was to be considered in the nature of a penalty, otherwise, as it is said, " if the plaintiff, on the one hand, had neglected to make a single payment of 3*l.* 6*s.* 8*d.* per day, or, on the other hand, the defendant had refused to conform to any usual regulation of the theatre, however minute or unimportant, it must have been contended that the clause in question, in either case, would have given the stipulated damages of £ 1000. "

This case and the case of *Astley* v. *Weldon*, 2 Bos. & Pul. 346, were decided upon the same principle, which appears to us to be satisfactory and is not to be controverted. It is supposed to conflict with the rule laid down in *Reilly* v. *Jones*, 8 Moore, 244. But it was certainly not so considered by the court, for the decision in the case of *Astley* v. *Weldon* is expressly admitted to be correct. We are therefore of opinion, that the stipulation to pay $ 1000 on failure of either party to perform his covenants, is to be considered in the nature of a penalty and cannot be maintained as a stipulation for liquidated damages.

The question then is, whether the defendants' stipulation to pay the sum of $ 300 on the breach of any of their covenants, is to be construed as a stipulation for liquidated damages.

The defendants' counsel rely on the cases of *Astley* v. *Weldon*, 2 Bos. & Pul. 346, and *Kemble* v. *Farren*, 6 Bingh. 141, as decisive against such a construction. In those cases it was decided, that liquidated damages cannot be reserved on an agreement containing various stipulations of various degrees of importance, unless the agreement specify the particular stipulation or stipulations to which the liquidated damages are to be confined. And it has been argued that this case depends on the rule of construction laid down in those cases, as well in respect to the stipulation for the payment of the $ 300, as to that for the payment of the $ 1000. But on examining the terms of the contract we think there is a material distinction between the two stipulations.

The defendants covenant, that on or before the day mentioned in the contract they will give notice to the plaintiff of their election either to agree to or to decline the purchase. And that if they should agree to the purchase, they would pay the purchase money, viz. the sum of $6343, in manner following, viz. one quarter part in cash on the delivery of the deed, and the remaining three quarter parts thereof in three equal instalments in three promissory notes of hand payable to the plaintiff or order, one payable in one year with interest, another payable in two years with interest annually, and the other payable in three years with interest annually, and secure the payment thereof by good and sufficient mortgages or other satisfactory security. These are all the covenants to which the stipulation in regard to the payment of the $300 refers. And the substance and meaning of the stipulation is, that if the purchase should fail, either by the defendants' declining the purchase or neglecting to give notice, or failing to make payments according to the terms of their agreement, then and in either case they were to pay the plaintiff the sum of $300.

It was immaterial to the parties, whether the purchase should fail by the defendants' declining the purchase, or by their neglect or inability to make payment. These stipulations of the defendants were not therefore of various degrees of importance, as was the case in *Kemble* v. *Farren* and in *Astley* v. *Weldon*. The true meaning of the contract appears to be, that the defendants were to complete the purchase or to pay the sum of $300. If the defendants had paid the one quarter part of the purchase money in cash, and the residue in notes with good security, they would have fulfilled the contract and would not be liable to pay the $300 for any failure on their part to pay the notes or the interest. For any such failure the plaintiff was to depend on his collateral security. The defendants' stipulation to pay the $300 on their failure to perform their covenants, was the only one which bound them to make any compensation to the plaintiff, if they should decline the purchase. He, in the meanwhile, was bound by his proposed terms of sale, and if the price of lands had declined, as not long after it did, he must have suffered by the suspension of his right. It might have been more or less than $300.

But as that was uncertain and might be difficult to ascertain, the amount was fixed by mutual agreement. Such agreements are common in similar contracts. That the parties so understood the stipulation in question, will not, as we think, admit of a reasonable doubt. If it be not so construed, it must be wholly rejected ; for to construe it as a penalty secured by another penalty, would be absurd. We are therefore of opinion, from the express words of the stipulation, and from the construction of the whole contract, that the $ 300 is the true measure of damages, and that on the facts agreed the plaintiff is well entitled to judgment for that sum.

Heard<br>v.<br>Bowers.

*Motion to take off the default overruled.*